reasons, without entering further into the subject, the judgment of *Baltimore* city court is reversed.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.

SMITH *vs.* EDWARDS.—June, 1828.

*S* assigned his entire stock of goods to *E,* but retained possession of it, went on with his business as usual, and made purchases from J, which when received into his store, were placed among the merchandise assigned to *E.* After some time *S* failed, and *E* took possession of all the goods in his store, (among which were some of the articles received from J.) sold them, and applied the proceeds to the payment of a debt due him by *S,* and of endorsements made by him for *S.* In an action by J against *E* for the goods sold and delivered to *S*—*Held,* that there was no evidence from which the jury might infer a partnership, an agency or fraud between *E* and *S,* so as to make *E* liable.

APPEAL from *Baltimore* County Court. Action of *assumpsit.* The declaration contained several counts—one for sundry articles properly chargeable in account, &c. one for goods sold and delivered, &c. and the usual money counts. The defendant, (now appellee,) pleaded *non assumpsit,* and issue was joined.

At the trial the plaintiff, (the appellant,) gave in evidence that *William Stansbury* was a merchant, residing in *Baltimore,* occupying a store therein, in which he was accustomed to sell various articles of hardware, dry goods and merchandize, which he carried on in his own name, and for his own account, for several years previous to, and on the 30th of March 1824, and until the month of August of that year, during all which time he was in good credit, and was in the frequent habit of purchasing merchandize for his said store on his own responsibility. The plaintiff further gave in evidence, that on the said 30th of March 1824, the said *William Stansbury* executed and delivered to the defendant the following bill of sale: "Know all men by these presents, that I, *William Stansbury,* merchant of the city of *Baltimore,* for and in consideration of the sum of one dollar current money of the *United States,* to me in hand paid by *Elizabeth Edwards* of *Baltimore* county, at or before the sealing and delivery of these

presents, the receipt whereof I, the said *William Stansbury,* doth hereby acknowledge, have granted, bargained and sold, and by these presents doth grant, bargain and sell, unto the said *Elizabeth Edwards,* her executors, administrators and assigns, the following negroes, to wit:  Negro *George,* negro *Nance, Elizabeth* and *Henry,* also a judgment I have obtained against *Andrew Magrew* in the state of *Ohio*; also my four wheel carriage, gig, all my household furniture of every kind and description in the dwelling-house that I at present occupy; and all my stock of goods on hand, consisting of a variety of hardware, groceries and dry goods.  To have and to hold all and singular the said negroes, household furniture, and stock of goods, and all and singular the other personal property above mentioned, and bargained and sold as aforesaid, unto the said *Elizabeth Edwards,* her executors, administrators and assigns, forever.  And I, the said *William Stansbury,* for myself, my heirs, my executors and administrators, all and singular the said negroes, household goods, and other personal property, unto the said *Elizabeth Edwards,* her executors, administrators and assigns, against me the said *William Stansbury,* my executors and administrators, and against all and every other person or persons whatsoever, shall and will warrant and forever defend by these presents."  Signed and sealed by the said *Stansbury* on the 30th of March 1824, and by him, on the same day, acknowledged before a justice of the peace for *Baltimore* county.

The plaintiff further gave in evidence by *Thomas J. Barry,* that he was, on the said 30th of March, long before and until the month of August 1824, a clerk in the employ of said *William Stansbury*; that on the said 30th of March 1824, said *Stansbury* had in his store hardware and other merchandize, on sale, to the amount of from $1000 to $3000 dollars; that in the months of April and May 1824, the goods and merchandize specified in the following invoices, were sold and delivered by the plaintiff to the said *Stansbury.*

"*Baltimore,* April 23d, 1824.

Col. *William Stansbury,* Bot. of *John W. Smith.*" (Then follows an account amounting to $204 08.)  Also "Col. *William Stansbury* Bot. of *John W. Smith.  Baltimore,*

May 13th 1824. (Then follows another account amounting to $110 00.) That the said goods and merchandize were received into the said *Stansbury's* store, accompanied with the said invoices, which goods were examined by the witness, compared with the invoices, found to agree, and the goods were placed on the shelves in the said store occupied by *Stansbury*, along with the other goods in the said store; and all the said goods were indiscriminately offered for sale as usual, and part of the goods purchased from the plaintiff were sold from time to time with the other goods, and a part of them remained in the store in the early part of August 1824. During all which time the witness had no knowledge of the bill of sale above mentioned, and considered himself as the clerk of said *Stansbury*, and all the goods in the said store as belonging to said *Stansbury*. That the witness was first informed that the defendant had a bill of sale for the goods in *Stansbury's* store, in the early part of August 1824, by Mr. *Richard Frisby*, the son-in-law of the defendant, who then, in her name, as her agent, demanded of the witness the key and possession of the store, which the witness refused to deliver until directed by *Stansbury*. That *Stansbury* on the same day directed the witness to deliver the key to Mr. *Frisby*, which he did; and that all the goods which remained in the store, including a part of those purchased from the plaintiff, but what proportion the witness does not know, were shortly after sold by *Frisby*, the agent of the defendant, at auction. And evidence was given, and it was admitted, that the proceeds of the sale at auction were about $2000. Which amount was received by an agent of the defendant, and part of it retained in satisfaction for money lent by her to *Stansbury*, and the residue applied to the payment of notes of *Stansbury* on which the defendant was security, as drawer or endorser, for the accommodation of *Stansbury*. The plaintiff also, by *Edward J. Richardson*, proved that the witness, as clerk to the plaintiff, made out the two invoices above inserted, and that the goods therein described were sold and delivered by the plaintiff to *Stansbury*, at the respective dates mentioned in the said invoices. The plaintiff further offered in evidence, that the money for which the goods were

sold at retail, was received by *Stansbury* during the months of March, April, May, and until the time when the goods in the store were delivered to Mrs. *Edwards,* and by him applied to the payment of his general debts, notes and household expenses, and to the reduction of notes which Mrs. *Edwards* had drawn or endorsed for the use and accommodation of said *Stansbury.* And the witness of the plaintiff, upon being asked by the plaintiff's counsel, whether there was any agreement when the bill of sale was executed, or at any other time, that the proceeds of the goods, or any part thereof, was to be received by Mrs. *Edwards,* the defendant, or applied to her benefit? replied, that none such was made or existed. That he himself had attended to the transaction for Mrs. *Edwards,* that he made none such, nor had she received any part thereof. Upon the cross examination of the plaintiff's witness by the defendant's counsel, he stated, that a note of *Stansbury's* was protested for non payment the day before the demand was made for the key; he also stated that he himself was on a note of *Stansbury's,* and that *Stansbury,* in the said month of August, after the sale of the goods, transferred to the witness his books of accounts of the business, and the accounts, to him, to secure the debt for which he was so responsible. The defendant then prayed the opinion of the court, and their direction to the jury, that the plaintiff upon the evidence so given was not entitled to recover—1st. Because there is no evidence offered to justify the jury in finding the existence of any co-partnership between the defendant and *William Stansbury.* 2d. Because there is no evidence offered to justify the jury in finding that the said store or business was carried on by *Stansbury* for the benefit, and on account of, the defendant, and that *Stansbury* was constituted her agent for that purpose. 3d. Because there is no evidence to justify the jury in finding that the said goods, wares and merchandize, mentioned in the invoices, were sold and delivered to the defendant by the plaintiff; and no evidence of any combination on the part of the defendant to obtain the plaintiff's goods by fraud. Which opinion and direction the Court [*Hanson* and *Ward,* A. J.] gave accordingly. The plaintiff excepted; and the verdict and judgment being against him, he appealed to this court.

The cause was argued before BUCHANAN, Ch. J. and EARLE, STEPHEN, and DORSEY, J.

*Raymond,* for the Appellant, contended, 1. That it was competent for the jury to infer from the evidence in the record, that *Stansbury* was the agent of the defendant below, and that the goods which he purchased of the plaintiff were for and on account of the defendant, and came to the defendant's possession; and that the court below erred in their instruction to the jury, that the plaintiff was not entitled to recover. 2. That the court erred in not leaving the case to the jury upon the evidence. He cited *Bank of Washington vs. Triplet & Neale,* 1 *Peter's Rep.* 31.

*Williams,* (District Attorney of *U. S.*) for the Appellee, cited *Davis vs. Davis, et al.* 7 *Harr. & Johns.* 36.

JUDGMENT AFFIRMED.

———— ✳ ————

## HUDSON *vs* WARNER & VANCE.—June, 1828.

A bill of sale of personal property made upon a good consideration, as, to indemnify the grantees against suretyships entered into, and to be entered into, is available between the immediate parties to the instrument, altho' not recorded.

Where a mortgage was executed of the entire stock in trade in the mortgagor's store, and three years afterwards, the stock in the same store was sold by trustees for the benefit of his creditors, in the absence of evidence, that in the intermediate time, there was an entire sale of the original stock, or that the part sold was replaced, or that any new stock was purchased and mingled with the old, it will be intended, that the sales made by the trustees, were of the remnant of the stock of goods mortgaged.

The grantee of a second mortgage of personal property recorded in time, *with notice* of a prior mortgage which was not duly recorded, is bound by the equitable rights of the first mortgagee, unless upon inquiry into the nature of his claim, the first mortgagee had led him to believe, that his incumbrances were removed, in which case, equity would never interpose to invalidate his legal title.

The act of 1729, *ch.* 8, had for its object the suppression of secret sales; by demanding that transfers should be recorded, it was intended that notice should be given, that no one might be injured, or deluded, by secret and unknown conveyances.

Its object then being to protect creditors from prior secret conveyances,